Bruce S. Asay
Associated Legal Group, LLC
1812 Pebrican Avenue
Cheyenne, WY 82001
(307) 632-2888
basay@associatedlegal.com

*Attorneys for the Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| THE BYRON TOWN COUNCIL, in its official capacity as the governing body by and on behalf of the TOWN OF BYRON, a Wyoming Municipal Corporation, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | Docket No. 20-CV-50-SWS |
| vs. | ) | |
| | ) | |
| ALEX J. CAMPOS, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND COUNTERCLAIM

The Defendant, Alex J. Campos, (Campos) by and through his undersigned counsel, for his Answer and Counterclaim to the Complaint filed on December 20, 2019 and removed to federal court in the above-captioned action states and alleges as follows:

### ANSWER

1. As to the allegations contained in paragraph 1 of the Complaint, the allegations constitute the Plaintiff's, Town of Byron's ("Plaintiff" or "Town"), characterization and therefore no response is required.

2. Defendant admits the allegations contained in paragraph 2 of the Complaint.

3. As to the allegations contained in paragraph 3 of the Complaint, the Defendant admits the same save that venue exists in the United States District Court for the District of Wyoming.

4. As to the allegations contained in paragraph 4 of the Complaint, the representations

constitute a characterization of the Plaintiff's position in regard to its Complaint and its interpretation of the Wyoming Declaratory Judgment Act and therefore no response is required

5.   Defendant admits the allegations contained in paragraph 5 of the Complaint.

6.   Defendant admits the allegations contained in paragraph 6 of the Complaint.

7.   The allegations contained in paragraph 7 of the Complaint constitute a characterization of the provisions of the Lease Agreement which document speaks for itself.

8.   The allegations contained in paragraph 8 of the Complaint constitute a characterization of the provisions of the Lease Agreement which document speaks for itself.

9.   The allegations contained in paragraph 9 of the Complaint constitute a characterization of the provisions of the Lease Agreement which document speaks for itself.

10. The allegations contained in paragraph 9 are argument of counsel to which no response is required.

11. As to the allegations contained in paragraph 11 of the Complaint, the allegations represent the contentions of the Plaintiff to which no response is required.

## **FIRST CLAIM FOR RELIEF**

12. The Defendant hereby incorporates by reference its answers provided herein above.

13. The allegations contained in paragraph 13 of the Complaint, including subparagraphs (a) through (m), constitute the Plaintiff's characterization of the referenced Lease Agreement which speaks for itself and therefore, no response is required.

14. The allegations contained in paragraph 14 of the Complaint constitute the Plaintiff's characterization of a provision of the Lease and therefore, no response is required

15. The allegations contained in paragraph 15 of the Complaint constitute the Plaintiff's characterization of a provision of the Lease and therefore, no response is required

16. The allegations contained in paragraph 16 of the Complaint constitute Plaintiff's legal argument to which no response is required.

17. The allegations contained in paragraph 17 of the Complaint constitute Plaintiff's opinion and legal argument to which no response is required.

The Defendant denies any and all allegations contained in the Town's Complaint not expressly admitted above.

## **AFFIRMATIVE DEFENSES**

Affirmatively, the Town is responsible for the lease that it prepared and offered to the purchaser. It should be held to the lease provisions that it offered and were accepted in lieu of the deed that it intended to provide. In addition, the Defendant affirmatively states that:

1. Failure to state a claim: The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. Laches: The Plaintiff's claims are barred by the Doctrine of Laches.

3. Waiver: The Plaintiff's claims are barred by Waiver and/or Estoppel.

4. Accord: The Plaintiff's claims are barred by the concept of Accord and Satisfaction.

5. Unclean Hands: The Plaintiff's claims are barred by the Doctrine of Unclean Hands.

6. Individual actions: The Plaintiff's claims are barred by its own acts or omissions.

**The Defendant reserves the right to add additional affirmative defenses as more information is revealed throughout the trial process**

## COUNTERCLAIM

The Counterclaimant, Alex J. Campos, (Campos) by and through his undersigned counsel, for his Counterclaim against the Town of Byron, (Town) Counterclaim Defendant herein, states and alleges as follows:

1. Alex J. Compos, the Counterclaimant herein, is a resident of Georgia and of diverse citizenship.

2. The Town of Byron, Counterclaim Defendant herein, a municipal subdivision of the state of Wyoming, is a small town of less than 600 people located in Big Horn County, Wyoming.

3. The events which give rise to the claims alleged herein occurred in Big Horn County, Wyoming, therefore venue is proper in the U.S. District Court for the District of Wyoming.

## FACTS COMMON TO ALL CLAIMS

1. In the years prior to 2010, students in Byron Wyoming were part of a consolidated school district, Big Horn County School District No. 1, and attended school in Byron, Wyoming.  As a part of the consolidated school district, when a new school building was constructed in an adjacent community, the students attending school in Byron were transferred to the new school building in the other community leaving the school buildings in Byron, Wyoming, vacant.

2. As the school facilities were vacant, Big Horn County School District No. 1 offered to gift the vacant school buildings-which included the adjacent but separate Home-Economics building (Home-Ec Cottage), to the Town of Byron.

3. In Byron's Town Hall Meeting, held August 23, 2011, the Town's governing body

(Town Council) voted to accept the gifted buildings.  The vacant school buildings included a main building with an auditorium, classes, gymnasium, cafeteria, offices and related space as well as a separate smaller building used as a home economics classroom.  While the school buildings including the Home-Ec Cottage were all to be gifted to the Town, the Home-Ec Cottage was held by the School District under a warranty deed that had a "Subject to Grantor's Option to Purchase" clause which restricted its alienability.

4.   Within just months of accepting the buildings from the School District, the Town was surprised by the unforeseen upkeep expense for the vacant school buildings. The school buildings were more than the Town could afford to maintain as it was overwhelmed by high utility and maintenance bills before the community even had a chance to utilize the buildings. The utilities alone would range somewhere between five-thousand dollars to eight thousand dollars a month in addition to the maintenance of the grounds.

5.   In the first winter the Town had ownership of the school buildings and properties, it failed to winterize the boiler system that heated the Home-Ec Cottage. The neglect caused the copper pipes throughout the house to break, the sewer lines to break and water damaged the Cottage.  The damage left the building without a heat source and rendered it uninhabitable.

6.      Faced with these unanticipated expenses, the Town of Byron quickly started looking into its options; one of which was to demolish the buildings which was estimated to cost 1.25 million dollars. The Town decided to sell all of the properties related to the old school buildings and rid itself of the costs and liabilities associated with the facilities.  The Town let it be known that it was selling the property.  The Counterclaimant, Alex Campos learned of the situation and made what is believed to be the first and only offer to purchase the property.  After

some delay, a letter of intent was submitted by Campos that ultimately included an offer for $70,000 to purchase all of the property and buildings, including the Home-Ec Building.

7.   The Town in addressing, reviewing and accepting the offer and later drafting the instruments of the sale had legal counsel.  The Town accepted the offer with a letter of acceptance and a copy of the contract dated February 3, 2012.  The Town's Council was well aware of the contract that it was accepting: its details, purpose, and intent were clearly expressed in a letter Mr. Campos received from the Town's Mayor.[1]  While the Town intended to alienate the buildings, there was a restriction on the gifted deed for the Home-Ec Cottage.  After discussion, the parties circumvented the restriction by agreeing to a 99-year lease.

8.   After the purchase of the buildings, Mr. Campos and other interested citizens formed an organization, Postern Capital, LLC (Postern) to manage the properties.  After acquiring the properties, including the Home -Ec Cottage, Mr. Campos through Postern rehabilitated the Home Ec Cottage so that it was usable, these remediation efforts included:

- repair of the sprinkler system and installation of a new sprinkler system,
-established bedding areas and landscaped the property,
-the removal and replacement of frozen water lines throughout the entire structure,
- repair of the sewer system by repairing or replacing all traps/toilets and broken lines,
-removal of a frozen boiler and all heat registers which were destroyed when it took possession and replaced it with a new forced air system,
-removal of carpet and exposed hardwood floors that it has refinished,
-repair of the bathrooms by removing stalls and completely remodeling them,
-repair of the kitchen by removing old Home-Ec cabinets and updating the facility (this included the removal of three kitchens, the design and construction of the living room area and installation of new carpet),
-repair of the bedrooms by installing walls for the common areas and running all electrical systems as well as installing carpet, and
-repair or replacement of exterior doors.

---

[1] The present Mayor, Pamela Hopkinson was very involved with the sale of the properties, often acting much like an advocate of the Town and arranging correspondence between the involved parties. The Town had elected her as Chairman of the School Committee on November 8, 2011.  She was aware of the facts surrounding the sale of the school buildings, supported the sale and now serves as Mayor of the Town of Byron.

In all, Postern expended over $50,000 to repair, remodel and remediate the Home-Ec Cottage in order for the community to enjoy it.

9.    For several years, Postern and the Town of Byron worked together to ensure that the facilities were used beneficially.  The Town was allowed the exclusive use of the gymnasium, auditorium, cafeteria, weight room, dance rooms and all common areas.    From about August 2012 until January 2013 the Town paid a subsidized amount of three-hundred dollars/month to Postern to help cover the cost of utilities while using the facilities without further cost.

10.    While the Counterclaimant and Postern managers wanted to help the community, after a few months of absorbing the majority of the utility costs, Postern asked the Town to increase its monthly payment to cover the utility costs.  At the owners' request, the Town agreed to pay for utilities-otherwise its citizenry used the old school facilities without additional cost.

11.    The use of the purchased school facilities for recreation by the Byron community was a success. In the beginning it was successfully operated with volunteers working in collaboration with the Town Hall/Council as well as Postern and the public.[2] The growing popularity and demand prompted the Town to appoint a recreation director.  At first, it was helpful to have a recreation director and the process worked well for the owners and the community. Unfortunately, as time passed, those using the building began to complain that: there were issues of safety, cleanliness, neglect and management issues with the recreation director. As these issues reflected negatively on the owners, Postern arranged a meeting with the Mayor, (now Pam Hopkinson) council members and others.   While the discussion helped for a time, in

---

[2] The Town used the facilities for no cost other than utilities but charged for recreation and subleased for profit the cafeteria, gym and auditorium for events.

the winter of 2018/2019, there was additional damage to the property and the contract between the owners and the Town's recreation department was terminated by Postern.

12.     The termination of the agreement and the loss of the recreation facility created difficulty for certain community members who used the facility. Complaints were made to the Town's leadership and on September 9, 2019, the Mayor sent an email to Postern, expressing the Town's intent to take-back the Home-Ec Cottage from Postern and sell it to build a new recreation center.

13. As Alex Campos and Postern had purchased the buildings and then expended tens of thousands of dollars in rehabilitating them, the offer was not considered appropriate.  The Town's offer was rejected as Mr. Campos and Postern had spent the years since the purchase of the old school buildings making repairs, managing the building, and paying taxes on the Home-Ec building. The demand for the return of the building was not appropriate as the owners have spent thousands of dollars and many hours working to take the building from a non-livable dwelling to a functioning valuable property

14.     The owners' remediation efforts were made after the purchase of the school buildings, including the Home- Ec Cottage, under the 99-year lease. It is not realistic nor lawful that after all these improvements were made-that years later, the seller can simply decide that it didn't like the agreement and make the decision to take the building back. It is particularly troubling that the Town's action is retaliatory for Postern's action in terminating the lease to protect its investment and reputation.

15.     In December, 2019, the Town filed a Declaratory Judgment Complaint against Alex J. Campos asking the state district court to invalidate the 99-year lease associated with the Home-Ec Cottage. [3]

## FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

16. Alex J. Campos, Counterclaimant herein, incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the previous and preceding paragraphs of this Counterclaim.

17. Campos, Counterclaimant herein, entered into a lease agreement with the Town for the purchase of the Home Economics building.  The 99-year lease was essentially for the purchase of the building as the Town could not alienate the building at the time that it wanted to sell it with the other buildings.  As the alienability restriction has been lifted, the Town should be required to provide clear title to the building to effectuate the intent of the parties and the Lease Agreement.

18. As a result of the Town's breach of the contract in failing to perform under the lease, Campos has suffered damages of the kind and in the amounts referenced in this Counterclaim, plus interest and applicable fees.

## SECOND CAUSE OF ACTION (INVERSE CONDEMNATION)

19. Alex J. Campos, Counterclaimant herein, incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the previous and preceding paragraphs of this Counterclaim.

20. The Town of Byron is seeking to acquire property for public use and yet refuses to pay compensation or institute eminent domain proceedings to accomplish the same.

---

[3] By information and belief, the complaint may not have been filed with appropriate authority.  It is known that the Town Council voted (4-0) on March 3, 2020 to dismiss the lawsuit which was apparently vetoed by the Mayor.

21. The Town of Byron's actions amount to a "taking of property". The challenged "taking" of the property or property rights of Mr. Campos is improper as the Town is legally required and obligated to pay compensation.

22.     Counterclaimant, Alex Campos, has an ownership interest in the property or a property right that the Town is seeking to take.  The Counterclaimant is presently damaged by the Town's action as it is losing the value of its property-given the cloud on the title and the Town's stated intent to take-back the property.  The Counterclaimant is entitled to compensation.

## THIRD CAUSE OF ACTION (SPECIF PERFORMANCE)

23.     Alex J. Campos, Counterclaimant herein, incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the previous and preceding paragraphs of this Counterclaim.

24.     Campos, Counterclaimant herein, entered into a Lease Agreement with the Town for the purchase of the Home-Ec Cottage.  The 99-year lease was essentially for the purchase of the building as the Town could not alienate the building at the time that it wanted to sell or get rid of the properties.  As the restriction imposed on the Town has now been lifted, the Town should be required to provide clear title to the building to effectuate the intent of the Lease Agreement.

25.     As a result of the Defendants' breach of the contract, Alex J. Campos, Counterclaimant herein, has suffered damages in the amounts referenced in this Counterclaim, plus interest and applicable fees and should receive clear title to the property and be compensated for his damages.

## FOURTH CAUSE OF ACTION (UNJUST ENRICHMENT/QUANTUM MERUIT)

26.     Campos, Counterclaimant herein, incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the previous and preceding paragraphs of this Complaint.

27.     The Counterclaimant herein, entered into a lease agreement with the Town for the purchase of the Home Economics building.  The 99-year lease was essentially for the purchase of the building as the Town could not alienate the building at the time it want to sell it.  As Mr. Campos treated the Home Ec Cottage as if it had been transferred to him, he made improvements to the building and allowed the community to use it in anticipation of his continued and future use.  It would be inequitable to allow the Town to retain the benefit of the improvements and services made to the building without compensation.  Indeed it would be contrary to statute and the common law for the Town to obtain the property and improvements provided by Mr. Campos and Postern without properly compensating the Counterclaimant for the value of the services provided.

28.     Pursuant to the equitable doctrines of quantum merit and unjust enrichment,  Counterclaimant is entitled to payment from the Town for the benefit conferred as provided the repair, remodeling and remediation of the property.

## FIFTH CAUSE OF ACTION (DUTY OF GOOD FAITH AND FAIR DEALING)

29.     Campos, Counterclaimant herein, incorporates and re-alleges, as though fully set forth herein, each and every allegation set forth in the previous and preceding paragraphs of this Complaint.

30.     Under applicable state law, there is a duty of good faith and fair dealing in every

contractual relationship. The Town by receiving the benefit of the use of the facilities over the years and accepting these benefits and services without paying the full value and now attempting to terminate the agreement without compensating the Counterclaimant for the services or the benefit received and knowingly failing to pay such services notwithstanding its knowledge of the benefit provided, breached its duty of good faith and fair dealing under the contractual relationship.

31.     As a result of the Town's breach of the duty of good faith and fair dealing in failing to pay for the services provided by the Counterclaimant while receiving a benefit, Counterclaimant has suffered damages in the amounts referenced in this Counterclaim plus interest, costs-including a reasonable attorney's fees and applicable fees.

**WHEREFORE**, the Counterclaimant, Alex J. Campos, requests judgment against the Town of Byron, as follows:

1.   That the Plaintiff, Town of Byron's claims referenced in the Complaint be dismissed with prejudice and judgment entered in favor of the Defendant, Alex Campos and against the Plaintiff;

2.   That the Counterclaimant, Alex Campos be awarded judgment in this matter, and that the Counterclaimant be awarded his costs, including:

- Damages incurred by the Counterclaimant as a result of the Town's wrongful conduct in the amount of at least the jurisdictional limit of the court plus interest and applicable fees or such amount as provided at trial in this matter;
- Prejudgment interest, post-judgment interest and the costs of this action;
- Reasonable attorney's fees; and

3.    Such other and further relief as this Honorable Court deems just and equitable.

Dated this 8th day of April, 2020.

_____S/ *BRUCE S. ASAY*_____
Bruce S. Asay
Associated Legal Group LLC
1812 Pebrican Avenue
Cheyenne, WY 82001
(307) 632-2888

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 8th, 2020, a true and correct copy of the foregoing *Answer and Counterclaim* was served by U.S. District Court electronic filing system, electronic and/or U.S. Mail to the following:

S. Joseph Darrah
Attorney for Plaintiff
254 East 2nd Street
Powell, WY 82435
(307) 754-2254
joey@darrahlaw.com

_____S:/ *BRUCE S. ASAY*_____
Bruce S. Asay